Filed 9/12/22

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| Guardianship of A.H. et al.,<br><br>    Minors.<br><br>---<br><br>ELOUISE HARBER,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>DELORES WILLIAMS,<br><br>    Petitioner and Respondent. | E077036<br><br>(Super.Ct.No. GARPS1900182)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Stanford E. Reichert, Judge.  Reversed.

Law Offices of Valerie Ross and Valerie Ross for Petitioner and Appellant.

Delores Williams, in pro. per., for Petitioner and Respondent.

No appearance for minors.

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

1

Elouise Harber and Delores Williams filed cross-petitions to be appointed as guardians of two children. The trial court ordered them to exchange lists of the witnesses they intended to call, specifically including party witnesses; it also specifically ordered that they would not be permitted to call a witness who was not on their lists. Harber failed to exchange a witness list. When the case was called for trial, her counsel explained that her only witness was Harber herself, and that counsel mistakenly believed that the pretrial order did not require her to list party witnesses. Pursuant to its pretrial order, the trial court dismissed Harber's petition and granted Williams's petition.

In the published portion of this opinion, we will hold that, under the circumstances of this case, the trial court abused its discretion by imposing a terminating sanction.

I

STATEMENT OF THE CASE

On April 18, 2019, Harber filed a petition to be appointed as guardian of two children, A.H. and M.W. She alleged that she was their maternal grandmother. She was represented by counsel.

On May 23, 2019, Williams filed a petition to be appointed as guardian of A.H. and M.W. She alleged that she was M.W.'s paternal grandmother; she had been told that she was also A.H.'s paternal grandmother, and she had acted as such, though recently she had been told that she actually was not. Two older siblings of A.H. and M.W. lived with her. She was in propria persona.

2

On July 29, 2020, the trial court held a trial setting conference. Harber's counsel was present, but Harber was not. Using a check-the-box form preprinted with the trial judge's name, the trial court ordered the parties to exchange, among other things, "list[s] of witnesses you intend to call, including parties . . . ." The exchange was to occur by February 3, 2021. The order also stated, "**EXCEPT AS OTHERWISE PROVIDED BY LAW, YOU WILL NOT BE PERMITTED TO CALL ANY WITNESSES OR INTRODUCE ANY EVIDENCE NOT INCLUDED IN THE STATEMENTS THE COURT HEREBY ORDERS YOU TO SERVE.**" A written copy of the order was provided to those present. The case was set for trial on March 3 and 4, 2021.

On February 17, 2021, Williams filed a declaration stating that Harber had failed to exchange a witness list.

On March 4, 2021, counsel for Harber conceded that she had not exchanged a witness list. She argued, "It's not noncompliance. We had no witnesses other than my client." The trial court pointed out that its pretrial order expressly applied to party witnesses. Harber's counsel responded, "I missed that." "It's my mistake that I failed to list my own client as a witness."

The trial court found that there was no "[m]istake, inadvertence, surprise or excusable neglect." Based on Harber's failure to comply with the pretrial order, it dismissed her petition and overruled her objections to Williams' petition. Thus, it granted Williams' petition and issued letters of guardianship to her.

3

II

MOOTNESS

Williams suggests that this appeal is moot because the children are living with their father, albeit in her home.

She does not claim that the guardianship has been terminated. We take judicial notice of the superior court's register of actions. It shows that Williams is still the duly appointed guardian. The father has not been given custody, and the guardianship has not been terminated. (See Prob. Code, § 1601.) While it may have become more difficult for Harber to prove that she is the appropriate guardian, it is still possible for the trial court to remove Williams and to appoint Harber. Thus, the appeal is not moot.

III

FAMILY CODE SECTION 217

Harber contends that the pretrial order was invalid because it was inconsistent with Family Code section 217 (section 217). Section 217, as relevant here, says: "A party seeking to present live testimony from witnesses *other than the parties* shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. *If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing.*" (§ 217, subd (c), italics added.)

"Courts . . . have the authority to adopt local rules, so long as those rules are consistent with statutory procedures adopted by the Legislature and the Rules of Court

4

adopted by the Judicial Council. [Citations.] . . . [W]hen no procedure is specified by statute or rule, judges may fashion nonstatutory procedures suitable to the specific cases before them. [Citation.] Courts, however, do not have the authority to adopt procedures or policies that conflict with statutory law or the Rules of Court. [Citation.]" (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 857.)

Section 217, however, applies only "[a]t a hearing on any order to show cause or notice of motion brought pursuant to this code" — i.e., the Family Code. (§ 217, subd. (a); see generally *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 839-840 [discussing legislative history of § 217].) A guardianship proceeding is not a proceeding under the Family Code. Rather, it a proceeding under the Probate Code — specifically, Probate Code section 1500 et seq. Harber has not pointed to any similar provision that would apply in a guardianship proceeding, and we have found none.

We therefore conclude that the pretrial order did not conflict with section 217.

IV

THE RIGHT TO PRESENT EVIDENCE AND THE RIGHT TO TESTIFY

Harber contends that the trial court violated her right to present evidence and to testify at trial.

She seems to take the maximalist position that a trial court can *never* deny a party the right to present evidence and to testify. If so, we disagree.

"Ordinarily, parties have the right to testify in their own behalf [citation], and a party's opportunity to call witnesses to testify and to proffer admissible evidence is

5

central to having his or her day in court. [Citations.]" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357.)

At the same time, however, "'[i]t is . . . well established that courts have . . . inherent power to control litigation before them. [Citation.] . . . " . . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice. [Citation.]"' [Citation.]" (*Elkins v. Superior Court*, *supra*, 41 Cal.4th at p. 1351.) "The state's strong interest in prompt and efficient trials permits the non-arbitrary exclusion of evidence [citation] . . . . [Citations.]" (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146-1147.)

The trial court's inherent power "' . . . should never be directed in such manner as to prevent a full and fair opportunity to the parties to present all competent, relevant, and material evidence bearing upon any issue properly presented for determination. . . .' [Citation.]" (*Elkins v. Superior Court*, *supra*, 41 Cal.4th at pp. 1357-1358, italics omitted.)

Requiring an exchange of witness lists is conducive to orderly procedure. It promotes a fair trial by enabling the parties and counsel to prepare for trial and by preventing surprise. For the requirement to have teeth, there must be some sanctions if it is violated. Those sanctions may include the exclusion of evidence, unless that would "prevent *a full and fair opportunity* . . . to present all competent, relevant, and material

evidence . . . ." (*Elkins v. Superior Court*, *supra*, 41 Cal.4th at pp. 1357-1358, italics added, italics omitted.)

Harber had precisely such an opportunity. All she had to do was exchange a witness list. She was given ample notice that she needed to do this; she was specifically given notice that her witness list had to include party witnesses. Because a witness list exchange requirement is reasonable to insure the orderly administration of justice, and because Harber had a full and fair opportunity to comply with that requirement, she did not have an absolute right to present evidence and to testify.

Harber's maximalist position, however, subsumes the argument that, under the circumstances of this case, the trial court erred by denying her the right to present evidence and to testify. As to that, we agree.

As noted, the trial court can exclude evidence — even when its purpose is to promote the interest in prompt and efficient trials — only if the exclusion is not arbitrary. (*Maricela C. v. Superior Court*, *supra*, 66 Cal.App.4th at pp. 1146-1147.) "We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. [Citation.]" (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 988.)

Significantly, in this case, Harber was her own only witness. Thus, excluding her evidence was a terminating sanction; it was the basis for the dismissal of her petition and the granting of Williams' petition. This is *not* a case in which a party *does* exchange a witness list but later, at trial, seeks to call a witness who was not on the list.

7

"Courts have the inherent authority to dismiss a case as a sanction. [Citation.]" (*Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1271; see also Code Civ. Proc., §§ 128, subd. (a)(4), 581, subd. (m).) But "dismissal is *always* a drastic remedy to be employed *only* in the rarest of circumstances." (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 764.) "[T]here are two important inquiries to be made by trial courts when determining whether a plaintiff's actions warrant a dismissal with prejudice. First, the court must discern whether the plaintiff's pattern of conduct was so 'severe [and] deliberate' as to constitute extreme circumstances. [Citation.] Second, the court must look to see whether alternatives less severe than dismissal are available. The 'sound exercise of discretion requires the judge to consider and use lesser sanctions' unless the court's authority cannot possibly be otherwise vindicated. [Citation.]" (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 917.)

Five factors, taken in combination, render the order here an abuse of discretion.

First, it was Harber's attorney, not Harber, who was at fault. The fact that "the fault lies with the client and not the attorney" militates against using the inherent authority to dismiss. (*Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799; cf. *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 [trial court could properly sanction both client and attorney when there was "joint misconduct"].)

Harber was not at the trial setting conference at which the trial court made the order; there is no indication that it was ever personally served on her. Even if she were

8

aware of the order, it would normally be an attorney's responsibility to prepare and to exchange a witness list (and to meet the deadline for doing so). Harber's counsel stepped up and accepted responsibility, saying, "I missed that." "It's my mistake that I failed to list my own client as a witness." The trial court found that Harber's "attorney . . . failed to comply to the pretrial orders"; it ordered, "[A]ny and all objections are overruled as counsel failed to comply with pretrial orders." (Capitalization altered.)

Second, the misconduct of Harber's attorney was not severe or extreme. She claimed that she mistakenly believed that the witness list requirement did not apply to party witnesses. That mistake was at least negligent; the pretrial order said, in bold, capital letters, that this requirement *did* apply to party witnesses. Arguably, because the order was so clear, the trial court could have found that she was not credible and that she actually violated the pretrial order knowingly. Even then, however, there was no evidence that her failure to exchange a witness list had some deliberate tactical purpose. Likewise, there was no evidence that it was defiant or disrespectful. It was not part of any pattern of violations.

Third, the prejudice to Williams was negligible. Once Harber failed to exchange a witness list, Williams was entitled to rely on that failure by not preparing to cross-examine her or to rebut her testimony. This prejudice, however, could easily be remedied

9

by a continuance.[1]  The children were already living with Williams, so a continuance would not have postponed or impaired her interest in custody.

That ties into the fourth factor:  Lesser sanctions were adequate to vindicate the trial court's authority.  In addition to ordering a continuance, it could have imposed monetary sanctions up to $1,500.  (Code Civ. Proc., § 177.5.)  If it found that the violation was willful, it could even have sanctioned it as contempt.  (See generally *In re Ivey* (2000) 85 Cal.App.4th 793, 798.)

Which ties into the fifth factor:  The trial court's form order did not allow for any lesser sanctions.  No matter what the circumstances, it was one size fits all:  "**YOU WILL NOT BE PERMITTED TO CALL ANY WITNESSES NOT INCLUDED IN THE [WITNESS] STATEMENT[] . . . .**"  In other words, the trial court announced, up front, that it would not exercise any discretion.  The inherent power to dismiss, however, is a discretionary power.  "A trial court's failure to exercise discretion is itself an abuse of discretion.  [Citation.]"  (*Fadeeff v. State Farm General Insurance Co.* (2020) 50 Cal.App.5th 94, 104.)

In sum, we conclude that a trial court can exclude evidence as a sanction for the violation of an order to exchange witness lists — even when the exclusion amounts to a

---

**1**    Discovery is available in a guardianship proceeding.  (Prob. Code, § 1000; *Mota v. Superior Court* (2007) 156 Cal.App.4th 351, 355.)  Here, however, the witness list exchange was due on February 3, 2021, and the case was set for trial on March 3, 2021.  Thus, the 30-day discovery cutoff had already run.  (Code Civ. Proc., § 2024.020, subd. (a).)  It follows that Williams was not deprived of the opportunity to depose Harber.

terminating sanction — in an appropriate case.  In this case, however, the exclusion of

Harber's testimony was an abuse of discretion.[2]

V

DISPOSITION

The order appealed from is reversed.  In the interests of justice, we do not award

costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ           <br>P. J.

We concur:

McKINSTER         <br>               J.

RAPHAEL            <br>               J.

---

[2]     Harber also contends that the pretrial order was a local rule and, as such, it was not validly adopted.  Because we are reversing on other grounds, we do not reach this contention.